hLOTTINGER, Chief Judge,
concurring and dissenting.
To the extent that any other opinion or opinions in this matter affirm the judgment of the trial court, I concur, and to the same extent that any other opinion or opinions reverse the judgment of the trial- court, I dissent. I would affirm the trial court judgment in its entirety.
The essence of the trial court judgment is that the Board can enter into the contract at issue “without the approval of the Louisiana Legislature or the Governor of Louisiana.”
I find no error in the conclusion of the trial court that the contract at issue was a renegotiated contract vis a vis a new contract.
For a full understanding of the issues before this court, a recitation and analysis of the statutes at issue are necessary.
Primarily at issue is the interpretation of La.R.S. 27:245 A and R.S. 27:224 D & E. R.S. 27:224 D & E were enacted into law during the 1st Extraordinary Session of 1996 as part of Act 58. R.S. 27:245 was originally enacted as Act 384 of 1992 as R.S. 4:645, and was 12redesignated as R.S. 27:245 pursuant to Section 3 of Act 7 of the 1st Extraordinary Session of 1996.
La.R.S. 27:245A reads as follows:
A. The board shall have the right to set aside or renegotiate the provisions of any casino operating contract of a casino operator who is voluntarily or involuntarily placed in bankruptcy, receivership, conser-vatorship, or similar status. The corporation may agree in writing to allow the casino operator to be placed in bankruptcy, receivership, conservatorship, or other similar status without setting aside, revoking, or renegotiating the casino operating contract.
La.R.S. 27:224 D & E read as follows:
D. The governor by executive order, subject to legislative approval either by vote or by mail ballot, or the legislature by Act or Resolution may set aside or order that the corporation renegotiate the provisions of the casino operating contract of a casino operator who is voluntarily or involuntarily placed in bankruptcy, receivership, conservatorship, or similar status. Any action so taken shall constitute the revocation or modification of a pure and absolute revocable privilege as provided in R.S. 27:202(C). Neither the state of Louisiana nor any political subdivision thereof shall be liable in damages for such revocation, modification, or order for renegotiation.
E. The governor by executive order or the board overseeing the operation of the casino subject to legislative approval either by vote or by mail ballot, or the legislature by Act of Resolution may negotiate a new casino operating contract.
There is no question that prior to the 1st Extraordinary Session of 1996, under R.S. 27:245 A, the board had the authority to set aside or renegotiate the provisions of any casino operating contract of a casino operator who is voluntarily or involuntarily placed in bankruptcy, receivership, conservatorship, or similar status. The terminology “placed in bankruptcy” denotes an event post the execution of the contract, vis a vis before the contract or concurrent therewith. The board did not under any circumstances have the authority to enter into a new contract. There is no mention of gubernatorial or legislative approval for any action by the board to either set aside a contract or renegotiate an existing contract.
During the 1st Extraordinary Session of 1996 the legislature made several changes in the law relating to the issues before this court. By enacting R.S. 27:224 D, the legislature provided authority for the governor subject to legislative approval or the legislature by Act, Resolution or mail ballot to set aside or order the board to renegotiate the provisions of the casino operating contract of a casino operator who is voluntarily or involuntarily placed in ^bankruptcy, receivership, conservatorship, or similar status. Apparently the purpose of this statute was to give to the governor subject to legislative approval or the legislature the authority to either sét aside the operating contract or order the board to renegotiate the contract in the event *963 the operator was placed in bankruptcy and the board failed to act on its own considering that it already has such authority under R.S. 27:245. However, neither the governor with legislative approval nor the legislature has utilized the provisions of this section to set aside the operating contract or order the board to renegotiate, because the board acting on its own began renegotiations of the existing contract. R.S. 27:224 D also contained the terminology “placed in bankruptcy,” meaning prospective bankruptcy proceedings. Therefore, R.S. 27:224 D has no bearing on the issues herein and is inapplicable thereto.
But the legislature went a step further and enacted R.S. 27:224 E which allows the governor or the board subject to legislative approval or the legislature to negotiate a new operating contract. Of course this event can only occur after the original contract has been set aside pursuant to R.S. 27:245 A or 27:224 D. Prior to the enactment óf R.S. 27:224 E, the board did not have the authority to negotiate and enter into a new contract. The trial court determined that the contract at issue was not a new contract, but rather a renegotiation of the existing contract. I find no manifest error in this finding.'
Could the governor or the board subject to legislative approval negotiate a new contract? Could the legislature negotiate a new contract? The answer is a resounding YES, but only after the then existing contract has been set aside. But neither the board, nor the governor nor the legislature has moved to set aside the existing contract, thus, none are in a position to negotiate a new contract.
Could the governor subject to' legislative approval or the legislature by Act, Resolution, or mail ballot set aside a contract renegotiated by the board pursuant to R.S. 27:245 A or R.S. 27:224 D because the operator was in bankruptcy or a similar status at the time of the renegotiation? I think not. A fan-reading of the statutes involved leads me to believe that the authority to set aside or to renegotiate an operating contract is-based on the premise as found in R.S. 27:245 A and R.S. 27:224 D that the casino operator is voluntarily or involuntarily placed in bankruptcy, receivership, conservatorship, or similar status. This type of language is no different than similar language found in private leases allowing the lessor to cancel or terminate the lease 1^because the lessee is placed in bankruptcy. Of course, that language cannot be utilized to cancel a contract or lease entered into while the lessee is in bankruptcy. Otherwise, an individual in bankruptcy who enters into a lease with such language is at the mercy of the lessor. This type of language can only refer to an event post the execution or renegotiation of the contract. The fact that R.S. 27:224 D was enacted during the 1st Extraordinary Session of 1996 while the bankruptcy proceedings were ensuing does not change the result. It is the same language used in R.S. 27:245 which was enacted well prior to any bank-ruptey proceedings.'
It is certainly argued that the legislature intended to have the final approval of any operating contract entered into. I do not doubt that that may have been the intention of some legislators, albeit a majority, but that is not what the legislature' enacted. You can’t make a silk purse out of a sow’s ear.